2016 IL App (1st) 121604-B

No. 1-12-1604

Opinion filed June 30, 2020.

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 4475 |
| | ) | |
| MICHAEL NIETO, | ) | The Honorable |
| | ) | Rosemary Grant Higgins, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Pucinski and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Michael Nieto appeals from the trial court's order summarily dismissing his

*pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West

2012)). On appeal, defendant argues that his sentence is unconstitutional as applied under the

eighth amendment to the United States Constitution (U.S. Const., amend. VIII), and Illinois'

proportionate penalties clause (Ill. Const. 1970, art. I, § 11). In our original opinion, we vacated

defendant's sentence and remanded for resentencing pursuant to *Miller v. Alabama*, 567 U.S.

460 (2012), and *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016). We affirmed the

judgment in all other respects.

¶ 2     Four years later, our supreme court denied the State's petition for leave to appeal but directed us to vacate our prior judgment and

> "consider the effect of this Court's opinions in *People v. Buffer*, 2019 IL 122327, and *People v. Holman*, 2017 IL 120655, on the issue of whether defendant's sentence constitutes a *de facto* life sentence in violation of the Eighth Amendment and *Miller v. Alabama*, 567 U.S. 460 (2012), and determine if a different result is warranted." *People v. Nieto*, No. 120826 (Ill. Mar. 25, 2020) (supervisory order).

Having already vacated our prior judgment, we now consider the matter in light of *Buffer* and *Holman* and find that the same result is warranted.[1]

¶ 3                                 I. BACKGROUND

¶ 4                                      A. Trial

¶ 5     The evidence presented at defendant's jury trial generally showed that on July 14, 2005, defendant, age 17, was riding in a black Ford Expedition with three other Latin Kings. While in a residential neighborhood, the young men encountered a red Jeep Cherokee whose occupants, victim Richard Soria and victim Israel Fernandez, allegedly used a sign disrespecting the Latin Kings. The Ford chased the Jeep. Ultimately, defendant, the front-seat passenger, shot at the Jeep, fatally shooting Soria in the head and injuring Fernandez. Defendant subsequently told his brother-in-law that defendant had just "lit up some flakes" and that one victim received a "dome shot." The jury found defendant guilty of the first degree murder of Soria and the aggravated battery with a firearm of Fernandez. Additionally, the jury found that defendant personally discharged a firearm that proximately caused Soria's death.

---

[1]Justice Coghlan has replaced Justice Mason, who retired while the State's appeal was pending.

¶ 6                                    B. Sentencing

¶ 7      The presentence investigative report (PSI) stated, among other things, that defendant's

highest level of education was the eighth grade. He was expelled from his freshman year of high

school for fighting. In 2006, defendant failed the GED exam but planned to retake it and earn a

business degree. Although defendant was unemployed, he had previously done some remodeling

work and sold drugs to support himself.

¶ 8      According to the PSI, defendant stated that his father was in poor health, having been

shot and stabbed at various times, and had been incarcerated for defendant's entire life.

Defendant also stated that he was primarily raised by his maternal grandmother because his

mother was a drug addict. For two years, defendant and his mother lived with her boyfriend. Her

boyfriend, however, decided he did not want defendant to live with them. As a result, defendant

lived with his paternal grandfather in Texas, where he remained until 2002. At that time,

defendant's mother summoned him back to Chicago due to his grandmother's poor health.

Defendant received counseling after his grandmother's death and believed that he could benefit

from further counseling but had not requested it because it was "too much trouble." Defendant

subsequently lived with friends or on his own. Defendant also reported that his only friend

happened to be a gang member with a criminal record. We note that defendant's brother-in-law

testified that at the time of the offense, defendant occasionally lived with his family.

¶ 9      Defendant, who smoked marijuana daily, had committed armed robbery, attempted

robbery, and possession of cannabis as a minor. Tragically, he had pending charges of

involuntary manslaughter and reckless discharge of a firearm for accidentally killing his younger

brother, Elias Nieto, on December 24, 2005, after the present offense.

¶ 10    At sentencing, Detective Robert Girardi testified he learned that defendant possessed a gun that jammed and then discharged, accidentally shooting Elias. Defendant held Elias' hand on the way to the hospital and unsuccessfully tried to resuscitate him. Detective Girardi was informed that defendant had asked his mother to come to the police station, but she refused to see him. Following the detective's testimony, the State presented the victim impact statements of Soria's father, sister, and brother-in-law. The State argued that defendant deserved the maximum sentence available, while defense counsel argued that even the aggregate minimum sentence of 51 years would ensure that defendant would not be released until he was almost 70 years old.

¶ 11    The trial court stated that it considered all the evidence, arguments, and defendant's offenses. In aggravation, the court found that defendant shouted gang slogans and used a firearm belonging to his gang to fire multiple times at unarmed victims, who were Satan Disciples. Additionally, no serious provocation was involved. Afterward, defendant told fellow gang members that he "lit up some flakes." The court also found that defendant and his companions used police scanners to get information and avoid prosecution. The court further found that not only was defendant's criminal conduct likely to recur, but it did recur, given the shooting of Elias. The court also observed that defendant blamed Elias for defendant's own decision to tell the police that Satan Disciples shot Elias, which potentially caused the police to pursue rival gang members. Nonetheless, the court recognized defendant's "considerable remorse for his brother's death and regret at what he considered to be an accidental shooting."

¶ 12    With respect to gang activity, the court considered deterrence:

      "I do find that his ongoing criminal activity is an indication to this court that his gang, the Latin Kings, and the Satan Disciples as well, should know that this sentence is necessary to deter others from committing similar crimes. The use of gangs and gang

violence for revenge, either on the Satan Disciples' part or on the Latin Kings' as a consequence of this action or Mr. Nieto's action."

The court also rejected defense counsel's suggestion that defendant lacked the opportunity to receive therapy. Instead, the court found the PSI showed he had the opportunity but decided it was too much trouble to take advantage of. The court further stated, "[h]is character and attitude as displayed over the course of his life does not indicate to me significant rehabilitative potential."

¶ 13    With that said, the court also stated as follows:

"I have taken into consideration your young age. I have taken into consideration the fact that everybody, no matter what crimes they commit, can do something to change their lives. You will have to do that something, Mr. Nieto, in the Illinois Department of Corrections. But you can do something. Perhaps you can work with the gangs there and somehow rectify the wrongs you did when you committed the murder of Richard Soria, [the aggravated battery with a firearm of] Israel Fernandez, and inadvertently the death of your own brother.

You can change it by pointing out to those people who perhaps will be able to someday walk the streets and advise them and work with the programs in the Illinois Department of Corrections to change their lives. You can be a pivotal person in that change if you are willing to do that. I do believe that there is something good in you. I don't believe that on the streets you are capable of doing that good. I believe that the influence of the gangs and the strength and control they had over you in addition to your character did not permit you the opportunities that you will have in the Illinois

Department of Corrections to help change somebody else's life and maybe save a life or two.

I believe that when you are shaking your head you are doing it in a positive way, and that you can do something positive for your mother, for your brother, and rectify his death and somehow make good on that."

The court sentenced defendant to 35 years in prison for first degree murder, 25 years for the personal discharge of a firearm, and 18 years for aggravated battery with a firearm, all to be served consecutively for a total of 78 years.

¶ 14     Defendant moved for the court to reconsider, given that he was only 17 years old on the date of the offense and would be required to serve 75.3 years of his sentence after receiving sentencing credit. Defendant argued that his sentence did not adequately reflect his potential for rehabilitation and restoration to useful citizenship. Furthermore, defendant argued that recent studies showed long prison sentences do not affect deterrence and that the court's statement regarding sending a message to gang members was against the prevailing academic view. The court denied defendant's motion.

¶ 15                              C. Direct Appeal

¶ 16     We affirmed the judgment on direct appeal, rejecting, among other things, defendant's assertion that his sentence was excessive. *People v. Nieto*, No. 1-09-0670 (2011) (unpublished order under Illinois Supreme Court Rule 23). Specifically, defendant argued that his 78-year sentence was the equivalent of a life sentence and negated the possibility of restoring him to useful citizenship. We stated, "[t]here is no dispute that this young man represents a rather tragic figure and that the arc of his life has been unredeemably sad." Nonetheless, we adhered to the legal presumption that the trial court considered all mitigating evidence, absent any contrary

indication. We did not, however, question whether the trial court was able to discern what factors were aggravating and mitigating.

¶ 17                                    D. Petition Under the Act

¶ 18    On February 21, 2012, defendant filed a *pro se* petition under the Act, raising several claims not at issue here. The trial court summarily dismissed defendant's petition on April 5, 2012, and defendant filed a timely notice of appeal. Subsequently, however, the United States Supreme Court held in *Miller*, 567 U.S. at 470, 476, 479, that the eighth amendment prohibits sentencing schemes that mandate the imposition of life sentences without parole even on juveniles who commit homicide. This is because mandatory life sentences prevent a trial court from considering the ways in which juveniles are constitutionally different from adults. *Id.* at 474. This decision in *Miller* followed two other landmark cases involving sentencing requirements for juvenile offenders. *Roper v. Simmons*, 543 U.S. 551, 578 (2005) (holding that the eighth amendment prohibits a trial court from imposing the death penalty where the offender was under 18 years of age when the offense was committed); *Graham v. Florida*, 560 U.S. 48, 74 (2010) (prohibiting the imposition of a life sentence without parole on juveniles who did not commit homicide). On appeal, defendant asserts only that his sentence violates *Miller*.

¶ 19                                    II. ANALYSIS

¶ 20                                    A. The Act

¶ 21    The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. *People v. Tate*, 2012 IL 112214, ¶ 8. The Act's forfeiture rule, however, provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." (Internal quotation marks

omitted.) *People v. Williams*, 2015 IL App (1st) 131359, ¶ 14 (quoting 725 ILCS 5/122-3 (West 2012)). This rule is more than a suggestion, and appellate courts generally may not overlook forfeiture caused by a defendant's failure to include an issue in his petition. *Id.*

¶ 22                              B. Forfeiture

¶ 23    Defendant has conceded on appeal that he did not raise this as-applied constitutional challenge in his petition, which was filed prior to *Miller*. He also contends, however, that this particular claim is not subject to forfeiture. In our original opinion, we agreed, notwithstanding the State's argument to the contrary. Although the supreme court's mandate did not direct us to reconsider our prior finding that forfeiture does not apply, we observe that the opinions issued over the last four years would not have led us to a different determination.

¶ 24                              1. *Davis*

¶ 25    Just as we did when addressing forfeiture in our initial opinion, we begin our tortuous journey with *People v. Davis*, 2014 IL 115595, a case that does not discuss forfeiture. There, the defendant asserted, in a motion for leave to file a successive petition under the Act, that his mandatory life sentence was unconstitutional. The trial court, however, denied leave. *Id.* ¶ 9. While his appeal was pending, the decision in *Miller* was issued. *Id.* ¶ 10. The appellate court determined that *Miller* applied and granted the defendant relief. *Id.*

¶ 26    Before the supreme court, the defendant argued he could challenge, in a collateral proceeding, the statutory scheme requiring him to be sentenced to natural life in prison for a crime committed as a juvenile because *Miller* rendered his sentence void. *Id.* ¶¶ 4, 24. Our supreme court found that while a statute is void *ab initio* where facially unconstitutional, the sentencing statute requiring the defendant to be sentenced to natural life in prison was not facially unconstitutional because it could be validly applied to adults. *Id.* ¶¶ 5, 25, 27, 30.

¶ 27    Nonetheless, the court concluded that the mandatory term of natural life without parole was unconstitutional as applied to this juvenile defendant. *Id.* ¶ 43. Additionally, *Miller* applied retroactively to the defendant's collateral proceeding because *Miller* created a new substantive rule. *Id.* ¶¶ 34, 38. Specifically, *Miller* placed a particular class of persons covered by the statute beyond the State's power to impose a particular category of punishment. *Id.* ¶ 39. The supreme court also found the defendant established cause for not raising the claim in an earlier proceeding because *Miller*'s new substantive rule was not previously available. *Id.* ¶ 42.

¶ 28                                2. *Thompson*

¶ 29    The following year, our supreme court issued its decision in *People v. Thompson*, 2015 IL 118151. There, the defendant was convicted of two counts of first degree murder, committed when he was 19 years old, and was sentenced to natural life in prison. *Id.* ¶¶ 6-7. In contrast to the defendant in *Davis*, defendant Thompson's petition, filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), did not challenge the constitutionality of his sentence (*Thompson*, 2015 IL 118151, ¶¶ 13-14). The petition was dismissed on the State's motion, and the defendant appealed, arguing for the first time that his sentence was unconstitutional as applied under *Miller*. *Id.* ¶¶ 15-17.

¶ 30    Before the supreme court, the defendant recognized that *Miller* expressly applied to minors under 18 years of age but argued that *Miller*'s policy concerns applied with equal force to a 19-year-old. *Id.* ¶ 21. Additionally, the defendant argued that because his as-applied constitutional challenge constituted a challenge to a void judgment, he could raise it at any time. *Id.* ¶ 30.

¶ 31    Our supreme court observed that judgments are void where jurisdiction is lacking or where a judgment is based on a facially unconstitutional statute, which is void *ab initio*. *Id.*

¶¶ 31-32. The defendant's as-applied challenge, however, fit within neither category. *Id.* ¶ 34. Additionally, the supreme court rejected the defendant's assertion that it was illogical to permit a defendant to raise facial constitutional challenges to a sentence at any time but not as-applied challenges. *Id.* ¶¶ 35-36.

¶ 32    A facial challenge requires demonstrating that a statute is unconstitutional under any set of facts. *Id.* ¶ 36; but *cf. People v. Harris*, 2018 IL 121932, ¶ 53 (characterizing the defendant's contention that *Miller* should extend to all young adults under age 21 as a facial challenge). In contrast, an as-applied challenge requires a showing that the statute is unconstitutional under the specific circumstances of the challenging party. *Thompson*, 2015 IL 118151, ¶ 36. As a result, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* ¶ 37.

¶ 33    The supreme court found the record contained neither information about how science on juvenile maturity and brain development applied to the defendant's case, nor any factual development of whether *Miller*'s rational should be extended to minors over 18 years old. *Id.* ¶ 38. Accordingly, "defendant forfeited his as-applied challenge to his sentence under *Miller* by raising it for the first time on appeal." *Id.* ¶ 39. This rationale would suggest that a defendant may overcome forfeiture where the record contains all facts necessary to review his as-applied challenge, raised for the first time on appeal.

¶ 34    Moreover, the supreme court rejected the defendant's reliance on *People v. Luciano*, 2013 IL App (2d) 110792, and *People v. Morfin*, 2012 IL App (1st) 103568. Presumably, defendant Thompson relied on those cases because, in each instance, the defendant obtained relief where raising *Miller* for the first time on appeal. See *People v. Thompson*, 2014 IL App (1st) 121729-U, ¶¶ 16, 18, 20-21.

¶ 35    In *Luciano*, the defendant, who committed murder at age 17, argued for the first time on appeal from the denial of his petition filed under the Act that his life sentence was unconstitutional as applied under *Miller*. *Luciano*, 2013 IL App (2d) 110792, ¶¶ 41, 46. The reviewing court found, contrary to *Thompson*, that even an as-applied sentencing challenge could be raised at any time. *Id.* ¶¶ 41, 46-48. The court ultimately granted the defendant relief. *Id.* ¶ 89. Additionally, the reviewing court in *Morfin* determined that *Miller* applied retroactively, although apparently, the State did not argue forfeiture in that case. *Morfin*, 2012 IL App (1st) 103568, ¶¶ 11, 20, 56.

¶ 36    Despite that defendant Thompson relied on *Luciano* to support his contention that he could raise his as-applied challenge for the first time on appeal, as defendant Luciano did, our supreme court did not state that *Luciano* was wrong in that regard. Instead, *Thompson* distinguished *Luciano* and *Morfin* on their merits: specifically, the defendants in those cases were minors, whereas the defendant in *Thompson* was not. See *Thompson*, 2015 IL 118151, ¶ 43. We further observe that while *Thompson* found the appellate court's holdings were consistent with *Davis*' determination that *Miller* applies retroactively (*id.* ¶ 42), forfeiture presents a distinct legal issue. See, *e.g.*, *People v. Reed*, 2014 IL App (1st) 122610, ¶ 94 (addressing forfeiture and retroactivity as separate issues).[2] When considered as a whole, *Thompson* implies that forfeiture does not apply to juveniles' as-applied eighth amendment challenges under *Miller*, notwithstanding the general rule prohibiting as-applied challenges raised for the first time on appeal.

---

[2]Retroactivity may, as a practical matter, preclude a finding of forfeiture or waiver. See, *e.g.*, *In re Rolandis G.*, 232 Ill. 2d 13, 28-29 (2008) (no forfeiture on direct appeal when new rule announced after the appeal was filed); see also *People v. Stechly*, 225 Ill. 2d 246, 268 (2007) (same); *People v. Craighead*, 2015 IL App (5th) 140468, ¶ 17 (finding the defendant showed cause and prejudice with regard to the *Miller* claim raised in a successive petition under the Act because *Miller* applies retroactively).

¶ 37                                3. *Montgomery*

¶ 38     The United States Supreme Court in *Montgomery* then indicated that state courts must give *Miller* effect in collateral proceedings. The Court, like our supreme court in *Davis*, held that *Miller* announced a substantive rule, which courts must apply retroactively. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732. Specifically, substantive rules set forth categorical constitutional guarantees that place certain laws and punishments beyond the State's power to impose. *Id.* at ___, 136 S. Ct. at 729. The Court found that while *Miller* did not bar punishment for all juvenile offenders, it did bar life without parole for all but the rarest juvenile offender and, consequently, was substantive. Compare *Id.* at ___, 136 S. Ct. at 734, with *Miller*, 567 U.S. at 483 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty."). Additionally, the Court found that *Miller*'s procedural component did not change the result, as substantive legal changes may, on occasion, be attended by a procedure permitting a prisoner to demonstrate that he falls within the category of persons no longer subject to punishment. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734-35.

¶ 39     Moreover, when a new substantive rule of constitutional law controls a case's outcome, state collateral review courts must give the rule retroactive effect. *Id.* at ___, 136 S. Ct. at 729. A court lacks authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the judgment became final before the rule was announced. *Id.* at ___, 136 S. Ct. at 731. The Court further stated, "[i]f a State may not constitutionally insist that a prisoner remain in jail on federal habeas review, it may not constitutionally insist on the same result in its own postconviction proceedings." *Id.* at ___, 136 S. Ct. at 731.

¶ 40    Our original opinion found that after *Davis* and *Montgomery*, *Miller* clearly applies retroactively to collateral proceedings. We also found, however, that *Thompson* and *Montgomery* suggested that Illinois' procedural rules regarding forfeiture could not be applied to juvenile defendants raising *Miller* claims, emphasizing *Montgomery*'s unconditional finding that state courts lacked authority to leave intact a sentence that violates *Miller*.

¶ 41                                    4. *Merriweather*

¶ 42    Following our initial decision in this case, the Fourth District of this court disagreed. In *People v. Merriweather*, 2017 IL App (4th) 150407, ¶¶ 5, 14, the juvenile offender asserted for the first time on appeal from the denial of leave to file a successive postconviction petition that his 70-year sentence for first degree murder was a *de facto* life sentence that was unconstitutional as applied to him. The State argued, however, that the defendant could not first raise this as-applied constitutional challenge on appeal, and the reviewing court agreed. *Id.* ¶ 14. The court, relying on *Thompson*, noted the crucial differences generally observed between facial and as-applied challenges and disagreed with our original determination that *Thompson*'s treatment of *Luciano* and *Morfin* supported overlooking forfeiture. *Id.* ¶¶ 15-19. The court did not, however, acknowledge *Montgomery*'s strongly worded statement that courts lack the authority to leave in place a sentence that violates *Miller*. See *Montgomery*, 577 U.S.at ___, 136 S. Ct. at 731. Furthermore, *Merriweather* did not identify any area in which the record before it was lacking. Consequently, we are not persuaded by *Merriweather*.

¶ 43                                    5. *Holman*

¶ 44    After *Merriweather* was decided, our supreme court issued *People v. Holman*, 2017 IL 120655. There, the State argued that the defendant forfeited his as-applied *Miller* claim by, among other things, failing to raise it in his motion for leave to file a successive petition. *Id.* ¶ 27.

The supreme court agreed with the defendant's contention that the State had forfeited any forfeiture under the facts of that case but added that it would nonetheless have reached the merits of his claim. *Id.* ¶¶ 28-29.

¶ 45    The supreme court noted the differences between facial and as-applied challenges, but found that in *Davis*, the supreme court had "excused the defendant's failure to raise an as-applied *Miller* claim sooner because the record was sufficiently developed to address that type of claim." *Id.* ¶¶ 29-31. We note that *Davis* did not provide the explanation offered in *Holman*. We also note that neither *Davis*, nor *Holman*'s explanation of *Davis*, used the word forfeiture.

¶ 46    In any event, *Holman* found that "*Thompson* instructs that a defendant must present an as-applied constitutional challenge to the trial court in order to create a sufficiently developed record. *Davis* creates a very narrow exception to that rule for an as-applied *Miller* claim for which the record is sufficiently developed for appellate review." *Id.* ¶ 32. Because all necessary facts were in the record, and in the interests of judicial economy, the supreme court chose to address the merits of the defendant's claim. *Id.*

¶ 47    This would seemingly suggest that forfeiture does not apply to a *Miller* claim where the record is sufficiently developed. Unfortunately, *Holman* expressly declined to resolve the appellate court's dispute regarding whether forfeiture applies in those circumstances. *Id.* ¶ 32 n.5.; but *cf. People v. Buffer*, 2019 IL 122327, ¶ 29 (stating that clear, uniform, predictable, constitutional standards are especially desirable in the context of the eighth amendment). Consequently, *Holman* is a wash when it comes to forfeiture.

¶ 48    Under the present state of case law, we abide by our original determination. *Miller* was issued only after the circuit court dismissed defendant's petition and the record is sufficiently complete to review defendant's claim. We can conceive of no policy to be furthered by finding

forfeiture occurred here. See also *People v. Warren*, 2016 IL App (1st) 090884-C, ¶¶ 48-49

(finding that the reviewing court could grant the defendant relief despite raising his *Miller*

challenge for the first time on appeal from denial of leave to file his successive postconviction

petition). We now address the merits of defendant's claim.

¶ 49                                    C. Applying *Miller*

¶ 50                                    1. The Original Opinion

¶ 51     When we issued our original opinion, several *Miller*-related questions had not been

settled. We nonetheless found that a juvenile defendant's sentences may cumulatively constitute

a *de facto* life sentence under the eighth amendment. See *People v. Gipson*, 2015 IL App (1st)

122451, ¶ 61. We also determined that following *Montgomery*, the requirements of *Miller*

applied to both mandatory and discretionary life sentences. Furthermore, we determined that

defendant's cumulative 78-year sentence constituted a discretionary, *de facto* life sentence, while

noting that even the minimum cumulative sentence would have been 51 years in prison.[3] Finally,

we found that where the record affirmatively shows that the trial court, in imposing a life

sentence on a juvenile, failed to comprehend the ways in which juveniles are constitutionally

different from adults, the defendant is entitled to relief. More specifically, we found that while a

trial court is not required to expressly make findings as to each youth-related factor identified by

*Miller*, a defendant is entitled to relief where the record affirmatively indicates that the trial court

has deviated from the principles discussed therein.

---

[3]Defendant's first degree murder conviction carried a sentencing range of 20 to 60 years. 730 ILCS 5/5-8-1(a)(1)(a) (West 2006). That conviction was also subject to a mandatory, consecutive firearm enhancement of 25 years. *Id.* § 5-8-1(a)(1)(d)(iii). In addition, defendant's Class X aggravated battery conviction required a sentence of between 6 and 30 years in prison. 720 ILCS 5/12-4.2(a)(1), (b) (West 2006). Furthermore, defendant was required to serve consecutive sentences. See 730 ILCS 5/5-8-4(a) (West 2006) (stating that "[t]he court shall impose consecutive sentences if *** one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury").

¶ 52                              2. Subsequent Illinois Supreme Court Holdings

¶ 53      After our opinion was issued, the Illinois Supreme Court held in *People v. Reyes*, 2016 IL 119271, ¶ 9 (*per curiam*), that "sentencing a juvenile offender to a mandatory term of years that is the functional equivalent of life without the possibility of parole constitutes cruel and unusual punishment in violation of the eighth amendment." Thus, *Reyes* confirmed that *Miller* applies to *de facto* life sentences. The supreme court subsequently concluded in *Holman* that "*Miller* applies to discretionary sentences of life without parole for juvenile defendants" and found that the trial court must specifically consider the characteristics of youth mentioned in *Miller*. *Holman*, 2017 IL 120655, ¶¶ 40, 43-44. Finally, *Buffer* succinctly set forth what a juvenile offender must do to prevail under *Miller*: The defendant must show that (1) he "was subject to a life sentence, mandatory or discretionary, natural or *de facto*," and (2) the sentencing court failed to consider the unique characteristics attending youth. *Buffer*, 2019 IL 122327, ¶ 27. The supreme court further clarified that a sentence of 40 years or greater constitutes a *de facto* life sentence without parole. *Id.* ¶ 40.

¶ 54                              3. Defendant's Sentencing Hearing

¶ 55      Following *Buffer*, defendant's cumulative 78-year sentence was indisputably a life sentence. Additionally, the record shows that the sentencing court failed to understand and consider the unique characteristics attending youth.

¶ 56      Life in prison without parole is disproportionate unless the juvenile defendant's crime reflects irreparable corruption. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 726. Sentencing courts must consider a child's diminished culpability as well as his heightened capacity for change. *Id.* at ___, 136 S. Ct. at 726. Children are immature, irresponsible, reckless, impulsive, and vulnerable to negative influence. *Miller*, 567 U.S. at 471. Additionally, they lack control

over their environment and the ability to extricate themselves from crime-producing circumstances. *Id.* Because a juvenile's character is not well formed, his actions are less likely to demonstrate irretrievable depravity. *Id.* It follows that youth diminishes penological justifications: (1) reduced blameworthiness undermines retribution, (2) impetuosity undermines deterrence, and (3) ordinary adolescent development undermines the need for incapacitation. *Id.* at 472-73. Additionally, life without parole entirely negates the possibility of rehabilitation. *Id.* at 473.

¶ 57    Consequently, "*Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge take into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' " *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 733 (quoting *Miller*, 567 U.S. at 480).

¶ 58    While we do not fault the trial court for failing to apply principles of law and science that had not yet been adopted by the Supreme Court, the trial court's findings do not imply that it believed defendant was the *rarest* of juveniles whose crime showed that he was permanently incorrigible. The court clearly found that for the foreseeable future, defendant was likely to engage in further criminal conduct due to the Latin Kings' influence over him and the tragic shooting of his brother. Given juveniles' susceptibility to peer pressure and recklessness, this is hardly surprising. Yet, susceptibility to peer pressure and recklessness erode with age. Indeed, the trial court found that in the future, defendant could do something positive. Specifically, he could change his life and even help other gang members change their ways, albeit in prison. Additionally, the court found defendant's sentence was necessary to deter not only him, but other gang members. We now know, however, that defendant's sentence is not likely to deter anyone. See *Id.* at ___, 136 S. Ct. at 733 (observing that deterrence is diminished in juvenile sentencing

- 17 -

because juveniles' recklessness, immaturity and impetuosity make them less likely to consider possible punishment).

¶ 59    As we recognized on direct appeal, the trial court expressly considered defendant's "young age." See also *People v. Holman*, 2016 IL App (5th) 100587-B, ¶ 43 (observing that we presume the court considers mitigating evidence before it). With that said, the record shows that the court did not consider the corresponding characteristics of defendant's youth.

¶ 60    In support of defendant's sentence, the State notes the aggravating factors found by the trial court, defendant's prior convictions, the unsatisfactory termination of probation, the death of his brother, his gang violence, his pride in announcing that he "lit up some flakes" and "hit a dome shot," his use of police scanners and his decision to shoot unarmed victims. Yet, examining these factors through the lenses of *Miller* may have led to a shorter sentence.

¶ 61    Under these circumstances, we vacate defendant's sentence and remand for a new sentencing hearing. See *Buffer*, 2019 IL 122327, ¶ 47. In light of our determination, we need not consider defendant's challenge under Illinois' proportionate penalties clause. We also affirm the trial court's dismissal of the claims raised in defendant's petition, as he has abandoned those claims.

¶ 62                                III. CONCLUSION

¶ 63    For the foregoing reasons, we vacate defendant's sentence and remand for resentencing. The judgment is affirmed in all other respects.

¶ 64    Affirmed in part and vacated in part.

¶ 65    Cause remanded with directions.

---

**No. 1-12-1604**

---

| | |
|---|---|
| **Cite as:** | *People v. Nieto*, 2020 IL App (1st) 121604-B |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 06-CR-4475; the Hon. Rosemary Grant Higgins, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Jeffrey B. Svehla, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and Lori M. Rosen, Assistant State's Attorneys, of counsel), for the People. |

---