2020 IL App (1st) 143269-UB

No. 1-14-3269

Order filed September 23, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 08 CR 16453 |
| | ) | |
| ADRIAN GOMEZ, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We reverse and remand for resentencing where defendant's 48-year sentence for an offense committed when he was a juvenile violates the eighth amendment where the sentencing court failed to sufficiently consider defendant's youth and its attendant characteristics and his potential for rehabilitation. We further find that defendant's postconviction counsel did not provide unreasonable assistance.

¶ 2    Our original order in this case was filed on June 29, 2017. In that order, we affirmed the

circuit court's dismissal of defendant's postconviction petition finding that defendant had

forfeited the argument that his sentence was unconstitutional pursuant to the eighth amendment

of the United States Constitution or the proportionate penalties clause of the Illinois constitution. We also rejected defendant's claim that he was denied effective assistance of postconviction counsel and that he was denied meaningful access to the courts. Defendant filed a petition for leave to appeal to the Illinois supreme court in August 2017. On March 25, 2020, the supreme court denied the petition for leave to appeal, but issued a supervisory order directing this court to vacate its order and to consider the effect of the supreme court's opinions in *People v. Buffer*, 2019 IL 122327 and *People v. Holman*, 2017 IL 120655, "on the issue of whether defendant's sentence constitutes a *de facto* life sentence in violation of the Eighth Amendment and *Miller v. Alabama*, 567 U.S. 460 (2012), and determine if a different result is warranted." The court also directed this court to consider the effect of the supreme court's opinion in *People v. Johnson*, 2018 IL 122227, "on the issue of whether defendant was entitled to the reasonable assistance of counsel at the first stage of post-conviction proceedings, and determine if a different result is warranted."

¶ 3     Defendant appealed to this court from an order of the circuit court of Cook County summarily dismissing his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILSC 5/122-1 *et seq.* (West 2010)). In his petition, defendant contended, *inter alia*, that his trial counsel was ineffective for failing to prepare him for trial and interview witnesses on behalf. On appeal, he abandoned the arguments made in his petition and contended that his 48-year sentence was unconstitutional under the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois constitution. He further contended that his postconviction counsel provided unreasonable assistance by failing to raise a claim in the postconviction petition that was cognizable under the Act, which also denied him meaningful access to the courts. For the reasons that follow, reverse and remand to the circuit court for a new

sentencing hearing where defendant's 48-year sentence for an offense committed when he was a juvenile violates the eighth amendment where the sentencing court failed to sufficiently consider defendant's youth and its attendant characteristics and his potential for rehabilitation.

¶ 4                                    I. BACKGROUND

¶ 5                                        A. Trial

¶ 6     A full recitation of the facts can be found in this court's order on defendant's direct appeal. *People v. Gomez*, 2012 IL App (1st) 102195-U (unpublished order under Supreme Court Rule 23). As pertinent here, the record shows that defendant was charged with the murder of Juan Torres in a shooting that occurred on June 20, 2008. Defendant was 16 years old at the time of the shooting. Following the testimony of several witnesses and a Chicago police detective, the jury found defendant guilty of first degree murder and that he personally discharged a firearm during the commission of that offense.

¶ 7     After the trial, defendant's counsel withdrew and defendant retained new counsel to represent him. Defendant's new counsel filed a motion for a new trial alleging ineffective assistance of defendant's original trial counsel in failing to interview defendant about his version of the events, failing to properly prepare for the trial, and failing to raise a claim of self-defense. The court held a hearing on defendant's motion during which defendant's original trial counsel, defendant, and defendant's mother testified. Following the hearing, the court noted that defendant testified that he told his trial counsel he had no witnesses to present on his behalf and further found that defendant's trial counsel had performed adequately throughout trial. The court therefore denied defendant's motion for a new trial.

¶ 8     At defendant's sentencing hearing, the trial court stated that there were many factors it had to consider in determining defendant's sentence, including deterring others from committing

this offense in the future. The court observed that defendant was "a young man. You were a teenager, a young teenager when this offense was committed." The court found, however, that based on the facts of the case, defendant responded to a fistfight by pulling out a weapon and taking a life. The court stated that it also considered defendant's lack of background, a single prior juvenile adjudication in 2007 for unlawful use of a weapon, and the facts surrounding the crime. The court noted that the minimum sentence in defendant's case was 45 years' imprisonment, and after considering all of the factors in aggravation and mitigation, sentenced him to a term of 48 years' imprisonment. On direct appeal, this court affirmed the circuit court's judgment over defendant's sole contention that the trial court erred in tendering the jury a second degree murder instruction. *Gomez*, 2012 IL App (1st) 102195-U.

¶ 9                                   B. Defendant's Postconviction Petition

¶ 10    On June 30, 2014, defendant filed, through counsel, the postconviction petition at bar. In his petition, defendant contended, *inter alia*, that his trial counsel was ineffective for failing to prepare him for trial and interview witnesses on behalf. In ruling on defendant's petition, the court dismissed the petition at the first stage of postconviction proceedings. The court found that it had considered the same claims of ineffective assistance in ruling on defendant's motion for a new trial. The court concluded that defendant's claims were therefore barred by *res judicata* and because defendant failed to raise any issue of trial counsel's ineffectiveness on direct appeal, the claims had also been waived. Defendant now appeals that ruling.

¶ 11                                          II. ANALYSIS

¶ 12    On appeal, defendant abandons the arguments set forth in his petition and instead contends that his 48-year sentence violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois

constitution of 1970 (Ill. Const. 1970, art. I, § 11). Defendant also contends that his postconviction counsel was ineffective for failing to raise claims in the petition that were cognizable under the Act.

¶ 13                         A. The Post-Conviction Hearing Act

¶ 14     As an initial matter, we note that the Act provides a three-stage mechanism by which a criminal defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2010); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). At the first stage of proceedings, the defendant is required to set forth only the "gist" of a constitutional claim, and the circuit court may summarily dismiss the petition if it finds that the petition is frivolous or patently without merit, *i.e.*, that it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 9, 16 (2009). Section 122-2 of the Act specifically provides that "the petition shall *** clearly set forth the respect in which petitioner's constitutional rights were violated," and, section 122-3 provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or amended petition is waived" (725 ILCS 5/122-2 (West 2010); 725 ILCS 5/122-3 (West 2010)). *People v. Jones*, 213 Ill. 2d 498, 503-04 (2004). We review the summary dismissal of a postconviction petition *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 389 (1998).

¶ 15                         B. *De Facto* Life Sentence

¶ 16     Defendant's claim that his 48-year sentence violates the United States and Illinois constitution is based on the United States Supreme Court's ruling in *Miller v. Alabama*, 567 U.S. 460 (2012) and subsequent decisions from both the United States Supreme Court and the Illinois supreme court interpreting and applying *Miller*. In *Miller*, the Supreme Court held that mandatory life sentences for juveniles violate the eighth amendment's prohibition of cruel and

unusual punishment. *Miller*, 567 U.S. at 489. The United States Supreme Court expanded on its decision in *Miller* in *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016). In *Montgomery*, the Court determined that *Miller* should apply retroactively and state courts must apply *Miller* in collateral proceedings. *Id.* at ___, 136 S. Ct. at 732. The Court further fond that *Miller* did not prohibit all life sentences for juveniles, but reserved life sentences for "the rare juvenile offender whose crime reflects irreparable corruption." (Internal quotation marks omitted.) *Id.* at ___, 136 S. Ct. at 733. Throughout the decision, the court repeatedly stated that the decision in *Miller* applied only to juvenile offenders sentenced to "mandatory life without parole." *Id.* at ___, 136 S. Ct. at 726, 732, 736.

¶ 17     The Illinois supreme court had an opportunity to interpret *Miller* in *People v. Davis*, 2014 IL 115595. In *Davis*, the defendant filed a successive postconviction petition under the Act contending that his mandatory life sentence was unconstitutional. *Id.* ¶ 10. The supreme court determined that *Miller* applied retroactively and that "*Miller's* new substantive rule constitutes 'cause' [to satisfy the 'cause and prejudice' test for successive postconviction petitions] because it was not available earlier***" *Id.* ¶ 42. In *People v. Reyes*, 2016 IL 119271, our supreme court expanded the holding of *Miller*, finding that *Miller* applied to so-called "*de facto*" life sentences for juveniles. The supreme court found that such sentences violate *Miller* where the sentence is so long that it "amounts to the functional equivalent of life." *Id.* ¶ 9

¶ 18     In our initial ruling in this case, we found, based on the divided opinions of the appellate court, that defendant had forfeited the right to challenge his sentence as a *de facto* life sentence because he did not raise the issue in his postconviction petition. We noted that, at the time, there was a lack of direction from the supreme court regarding how to address the numerous challenges by juveniles concerning their sentences, and found that, as a defendant's specific

factual circumstances were necessary to properly address the issue, it was improper for this court to address the issue for the first time on appeal.

¶ 19    Since this court's initial order, however, the supreme court has provided additional guidance concerning how this court should address claims raised by juvenile offenders challenging their discretionary and *de facto* life sentences. First, the supreme court issued its opinion in *Holman*, 2017 IL 120655, in which the court found that that the 17-year-old defendant's discretionary life sentence was unconstitutional because the record did not indicate that the trial court considered defendant's "youth and its attendant circumstances." *Id.* ¶ 47. The supreme court directed courts "revisiting a discretionary sentence of life without parole [to] look at the cold record to determine if the trial court considered such evidence at the defendant's original sentencing hearing." *Id.* The *Holman* court also addressed the issue of forfeiture and determined that where the record is sufficiently developed for appellate review, the court should address a defendant's claim that his sentence does not comply with *Miller* in the interests of judicial economy. *Id.* ¶ 32. *Holman*, however, concerned a juvenile defendant's discretionary life sentence without the possibility of parole, which is not at issue here. Instead, as discussed, defendant contended that his 48-year sentence was unconstitutional because it represented a *de facto* life sentence. At the time of our initial ruling, there was inconsistency among various panels and districts of this court regarding the precise number of years that represented a *de facto* life sentence.

¶ 20    Recently, however, the supreme court addressed *de facto* life sentences for juveniles in *Buffer*, 2019 IL 122327. In *Buffer*, a jury found the 16-year-old defendant guilty of first degree murder and that he personally discharged a firearm that caused the victim's death. *Id.* ¶ 5. The court sentenced defendant to a 25-year term of imprisonment on the first-degree murder counts

and an additional 25 years for personally discharging a firearm that resulted in the victim's death, for an aggregate term of 50 years. *Id.* This court affirmed defendant's conviction and sentence on appeal. *Id.* ¶ 6.

¶ 21 The defendant subsequently filed a *pro se* postconviction petition contending that his 50-year sentence violated the eighth amendment because it constituted a *de facto* life sentence. *Id.* ¶ 7. This court reversed the circuit court's dismissal of defendant's postconviction petition and the State appealed to the supreme court. *Id.* ¶¶ 9-10. After reviewing the United States Supreme Court's rulings in *Miller* and subsequent cases, the supreme court accepted the State's invitation to "decide when a prison term of years imposed in a juvenile is the functional equivalent of life without parole." *Id.* ¶ 29. The supreme court held that "[i]n determining when a juvenile defendant's prison sentence is long enough to be considered *de facto* life without parole, we choose to draw the line at 40 years." *Id.* ¶ 40. The court therefore determined that because the defendant's sentence was greater than 40 years and the record indicated that the circuit court failed to consider the "defendant's youth and its attendant characteristics" in imposing that sentence, that defendant's sentence was therefore unconstitutional. *Id.* ¶ 42. The court found that because all of the facts and circumstances necessary to determine the defendant's claim were already in the record, the appropriate remedy was to vacate defendant's sentence and remand for a new sentencing hearing. *Id.* ¶¶ 46-47.

¶ 22 The circumstances of *Buffer* are substantially similar to the case at bar. The primary distinction is that the defendant in *Buffer* raised the constitutional issues regarding his sentence in his postconviction petition, while the defendant in this case did not. However, as the *Holman* court explained, where the record is sufficiently developed for appellate review, this court should address a defendant's claim that his sentence does not comply with *Miller* in the interests of

judicial economy. *Holman, 2017 IL 120655*, ¶ 32. This notion was echoed by the *Buffer* court, which found that the appropriate remedy was to vacate defendant's sentence where all of the facts and circumstances to decide the defendant's claim were already on the record and where the record did not indicate that the sentencing court considered defendant's youth and its attendant circumstances. *Buffer*, 2019 IL 122327, ¶¶ 46-47. As such, this court has found "no policy to be furthered by finding forfeiture occurred" where defendant raises a *Miller*-based claim for the first time on appeal from the dismissal of a petition under the Act. *People v. Nieto*, 2020 IL App (1st) 121604-B, ¶ 48.[1]

¶ 23    Here, defendant's 48-year sentence clearly exceeds the 40-year guideline prescribed by *Buffer*. Therefore, defendant's sentence is constitutional only if the record shows that the sentencing court considered defendant's youth and its attendant characteristics. The supreme court in *Miller* discussed some of the attendant characteristics of youth:

> "Mandatory life without parole for a juvenile precludes consideration of his
> chronological age and its hallmark features—among them, immaturity, impetuosity, and
> failure to appreciate risks and consequences. It prevents taking into account the family
> and home environment that surrounds him—and from which he cannot usually extricate
> himself—no matter how brutal or dysfunctional. It neglects the circumstances of the
> homicide offense, including the extent of his participation in the conduct and the way
> familial and peer pressure may have affected him. Indeed, it ignores that he might have

---

[1]We note that version of *Nieto*, 2020 IL App (1st) 121604-B currently available on Westlaw and through the Illinois Supreme Court's website, improperly lists the original year of the decision in the public domain citation: "*People v. Nieto*, *2016* IL App (1st) 121604-B." (Emphasis added.) As the original version of the order has been vacated following the supreme court's supervisory order and the revised opinion was issued in 2020, the proper public domain citation is "2020 IL App (1st) 121604-B." This proper citation is reflected on the Illinois Supreme Court's website, but not on the text of the opinion itself. See http://www.illinoiscourts.gov/Opinions/recent_appellate.asp (last visited Aug. 3, 2020).

been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. [Citations.] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it." *Miller*, 567 U.S. at 477-78.

Similarly, the *Holman* court set forth a variety of factors a sentencing court should consider in determining whether to sentence defendant to a term of life imprisonment, or *de facto* life imprisonment, without parole:

"(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46; see also 730 ILCS 5/5-4.5-105(a) (West 2016) (codifying these factors).

¶ 24    Here, as in *Buffer*, the record indicates that the sentencing court did not adequately consider defendant's youth and its attendant characteristics. Although the sentencing court in this case noted that defendant was "a young man. You were a teenager, a young teenager when this offense was committed," such a blanket statement clearly does not encompass the considerations contemplated by *Miller*, *Holman,* and related cases. For instance, the *Buffer* court found that the sentencing court did not adequately consider defendant's youth and its attendant characteristics

in determining his sentence where the court specifically stated that it considered "defendant's age." *Buffer*, 2019 IL 122327, ¶ 5. Similarly, in *People v. Zachary Reyes*, 2020 IL App (2d), 180237, ¶ 31, this court noted that the record showed that the trial court stated that it considered the *Miller* factors at the juvenile defendant's sentencing hearing, but this court found that although the trial court noted the defendant's age before sentencing him to a *de facto* life sentence, the

> "trial court never commented on the defendant's immaturity, impetuosity, or ability to understand risks and consequences. The trial court did not specifically address whether the defendant was too young or too immature to resist the negative influences surrounding him at the time, or whether he was mature enough to maintain control over his actions."

The *Zachary Reyes* court determined that defendant's sentence therefore did not comply with *Miller* and *Holman* and that the appropriate remedy was to vacate the defendant's sentence and remand for resentencing. *Id.* ¶ 32.

¶ 25    Accordingly, we find that that because defendant's 48-year sentence is greater than 40 years, it represents a *de facto* life sentence. We also conclude that the circuit court failed to consider defendant's youth and its attendant characteristics in imposing that sentence. Accordingly, we hold that defendant's sentence violates the eighth amendment and is unconstitutional. We find that the appropriate remedy is to vacate defendant's sentence and remand the cause for a new sentencing hearing. On remand, defendant is entitled to be sentenced under the scheme prescribed by section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)). *Buffer*, 2019 IL 122327, ¶ 47; see also, *People v. Peacock*, 2019 IL App (1st) 170308, ¶ 25.

¶ 26                 C. Ineffective Assistance of Postconviction Counsel

¶ 27     We note that the supreme court's supervisory order further directed this court to consider the effect of *Johnson*, 2018 IL 122227, "on the issue of whether defendant was entitled to the reasonable assistance of counsel at the first stage of post-conviction proceedings, and determine if a different result is warranted." Defendant contends on appeal that his postconviction counsel provided ineffective assistance by raising procedurally barred claims in the petition. In our original order, we rejected defendant's claim of ineffective assistance of postconviction counsel on the basis that there is no constitutional right to the assistance of counsel in the first stage of the postconviction process. In *Johnson*, however, the supreme court held that "a defendant who retains a private attorney at the first stage of postconviction proceedings is entitled to a reasonable level of assistance of counsel." *Id.* ¶ 23.

¶ 28     Although the supreme court has not explicitly set a standard for determining whether postconviction counsel has provided "a reasonable level of assistance," this court has applied a "*Strickland*-like" analysis for evaluating counsel's performance. *People v. Zareski*, 2017 IL App (1st) 150836, ¶¶ 58-59; see *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, we evaluate whether the defendant has demonstrated prejudice, that is, whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Jackson*, 205 Ill. 2d 247, 259 (2001).

¶ 29     Here, defendant contends that his postconviction counsel provided ineffective assistance because his counsel drafted a petition that argued ineffective assistance of trial counsel, which was barred by both *res judicata* and waiver. Defendant contends that his postconviction counsel could have avoided these procedural bars by raising a claim of appellate counsel's ineffectiveness for failing to raise a claim of trial counsel's ineffectiveness. Although defendant

is correct, we could find that his postconviction counsel provided unreasonable assistance only if defendant can show that had postconviction counsel raised a claim of appellate counsel's ineffectiveness for failing to raise a claim of trial counsel's ineffectiveness that the result of his postconviction proceedings would have been different. That is, defendant would have to show that a claim based on trial counsel's ineffectiveness, raised under the premise of appellate counsel's ineffectiveness for failing to raise that claim, would have been sufficient to survive the first stage of postconviction proceedings. As defendant acknowledged in his brief, however, "the majority" of the claims of ineffective assistance of trial counsel were considered and rejected by the trial court at the hearing on defendant's motion for a new trial. At the hearing, defendant himself testified that he did not have any witnesses that could "counteract" the trial testimony presented by the State, that he told his trial counsel that he did not want to testify, and that he agreed with his trial counsel that he did not want to pursue a second degree murder instruction. Defendant also acknowledged in his brief that the remaining claims in the petition were positively rebutted by the record.

¶ 30    Defendant thus discusses why the claims of ineffective assistance were procedurally barred, but he fails to even suggest that the claims had any merit had they been raised under the guise of appellate counsel's ineffectiveness. In ruling on defendant's motion for a new trial based on trial counsel's performance, the trial court found that defendant had failed to meet either prong of the *Strickland* standard. The court found that the State presented "very compelling" evidence of defendant's guilt, including an eyewitness who identified defendant as the shooter and showed that defendant's actions were not justified. The court further found that counsel made strategic decisions, that were consistent with defendant's own beliefs regarding how the case should be presented, and found that trial counsel's performance was not deficient and did

not prejudice defendant. Before this court, defendant fails to identify any argument that could support a claim of ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel. Although such an argument may have helped defendant overcome the procedural bar that resulted in the dismissal of his petition, defendant has failed to show any prejudice resulting from such dismissal where he failed to identify any viable arguments that would have supported such a claim. As such, we cannot say that defendant's postconviction counsel provided unreasonable assistance. See *Zareski*, 2017 IL App (1st) 150836, ¶ 68 (finding that postconviction counsel did not provide unreasonable assistance despite raising claims barred by *res judicata* where defendant failed to explain how he was prejudiced by the barred claims and the record did not reveal any prejudice).

¶ 31                                III. CONCLUSION

¶ 32    For the reasons stated, we vacate defendant's sentence and remand for a new sentencing hearing consistent with this order.

¶ 33    Reversed; sentence vacated and cause remanded for resentencing, with directions.