# Illinois Official Reports

## Appellate Court

*People v. Brown*, 2021 IL App (1st) 180991

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY BROWN, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-18-0991 |
| Filed<br>Rehearing denied | August 26, 2021<br>September 9, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 01-CR-8574; the Hon. Matthew E. Coghlan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, Miriam Sierig, and Sarah Curry, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Matthew Connors, Assistant State's Attorneys, of counsel), for the People. |

Panel

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice Martin concurred in the judgment and opinion.
Presiding Justice Gordon concurred in part and dissented in part, with opinion.


## OPINION

¶ 1      On February 23, 2001, 15-year-old defendant Gregory Brown shot and killed 48-year-old Ernest Harris[1] while he and a codefendant were attempting to carjack Mr. Harris's vehicle in order to commit a drive-by shooting of a rival gang member. After protracted negotiations, on September 3, 2003, defendant entered a fully negotiated plea to one charge of murder (720 ILCS 5/9-1(a)(2) (West 2000)) and one charge of attempted aggravated vehicular hijacking (*id.* §§ 8-4, 18-4(a)(3)) in exchange for an agreed sentence of 30 years' imprisonment on the murder count and a concurrent sentence of 15 years' imprisonment on the attempted aggravated vehicular hijacking count. Thirteen years later, defendant filed a postconviction petition, which alleged that his plea was involuntary where (1) trial counsel misadvised him that he would be eligible for good conduct credit that would only require him to serve half of his sentence (15 years' imprisonment), (2) his attorney was ineffective for failing to move to suppress his confession, and (3) the trial court misadvised him that the upper end of the sentencing range for his offenses was life imprisonment or the death penalty when he pled guilty.

¶ 2      The trial court granted the State's motion to dismiss the second and third claims but advanced the first claim to the third stage and ordered an evidentiary hearing. Following the third-stage evidentiary hearing, the trial court dismissed the remainder of the petition.

¶ 3      For the following reasons, we affirm.[2]


## I. BACKGROUND

¶ 4

¶ 5      A 20-count indictment in case number 01-CR-8574 charged defendant with 18 counts of murder, one count of attempted aggravated vehicular hijacking, and one count of attempted armed robbery. Additionally, the indictment charged defendant with personally discharging a

---

[1]We note that there is a discrepancy in the record on appeal as to Mr. Harris's correct age where two different official court reporters were asked to transcribe the stenographic notes originally taken by official court reporter Renia Boykin. One transcript, contained in the common-law record and dated February 26, 2016, indicates that the victim was 48 years old, while the other transcript, contained in the report of proceedings and dated July 16, 2018, indicates that Mr. Harris was 84 years old. Where an arrest report contained in the common-law record and a Chicago Tribune article from March 1, 2001 (*2 Teens Charged in Fatal Shooting*, Chi. Trib. (Mar. 1, 2001), http://www.chicagotribune.com/news/ct-xpm-2001-03-01-0103010283-story.html#share=email~story [https://perma.cc/F9GQ-4LNU]), both indicate that Mr. Harris was 48 years old, we rely on the February 26, 2016, transcript.

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

firearm that proximately caused the death of Ernest Harris and apprised defendant of the State's intent to seek extended-term sentencing.

¶ 6     On September 3, 2003, defendant entered into a fully negotiated guilty plea. In exchange for defendant pleading guilty to one count of murder and one count of attempted aggravated vehicular hijacking, the State agreed to file *nolle prosequi* on the remaining 18 charges and recommend a concurrent sentence of 30 years' incarceration on a single murder charge and 15 years on the attempted aggravated vehicular hijacking charge.

¶ 7     Prior to entering his guilty plea, defendant was admonished as to the potential sentencing range for his offenses. Specifically, the trial court told defendant:

"THE COURT: Mr. Brown, in Count 2 of this indictment you are charged with the offense of first degree murder in that on or about February 23, 2001, at and within the County of Cook, State of Illinois, you committed the offense of first degree murder in that without lawful justification you shot and killed (name untranslated) while armed with a firearm, knowing such act created a strong possibility of death or great bodily harm to (name untranslated) in Section 9-1 A2 of the Criminal Code of the State of Illinois.

You are also charged Mr. Brown in Count 18 in the indictment, with the offense of attempt aggravated vehicular hijacking in that on or about February 23, 2001 at and within the County of Cook State of Illinois you committed the offense of attempt aggravated vehicular hijacking in that with the intent to commit the offense of aggravated vehicular hijacking you did an act with Rasson Davis push Ernest Davis about the body and Gregory Brown pointed a gun at Ernest Harris and demanded Ernest Harris' 1987 Honda from Ernest Harris' immediate presence by the use of force. And Gregory Brown was armed with a dangerous weapon, to wit, a firearm, which constitutes a step towards the commission of aggravated vehicular hijacking in violation of Section 8-4 and 18-4 A3 of the Criminal Code of the State of Illinois.

Do you understand, Mr. Brown, what it is you are charged with?

DEFENDANT: Yes, your Honor.

THE COURT: Is there anything about any of the charges that you do not understand?

DEFENDANT: I understand.

THE COURT: *Mr. Brown, attempt first degree murder*[3] *is punishable by mandatory incarceration in the Illinois Department of Corrections, for not less than 20 years nor more than 60 years. By that, I mean you must be sentenced to the Department of Corrections for any number of years not less than 20 nor more than 60.*

*Under certain circumstances, which are not present in your case, you could be sentenced to what is known as an extended term of imprisonment. By that, I mean I can sentence you to the state penitentiary for a determinate number of years not less than 50 nor more than 100.*

---

[3]Defendant concedes that this misstatement is of no consequence where he understood that he was pleading guilty to the offense of first degree murder.

*Under certain circumstances, which again do not appear to be present in your case, the punishment in your case could be natural life in the penitentiary or death. Do you understand the possible sentences that can be imposed?*

DEFENDANT: Yes, your Honor.

THE COURT: Aggravated vehicle—attempt aggravated vehicular hijacking is a Class 1 felony. It is punishable by incarceration in the Illinois Department of Corrections, also known as the Illinois State Penitentiary, for a determinate number of years, not less than four years nor more than 15 years. By that, I mean I could sentence you to the state penitentiary for a determinate number of years not less than four years nor more than 15 years.

Under certain circumstances, which probably are not present in your case, you can be sentenced to what is known as an extended term of imprisonment. By that, I mean I could sentence you to the state penitentiary for a determinate number of years, not less than 15 nor more than 30 years.

Also Mr. Brown, the charge of attempt aggravated vehicular hijacking under some circumstances could be made to run consecutive to the sentence imposed in Count 2 on the first degree murder case. In other words, you would serve first the sentence imposed on the first degree murder charge; and when that sentence has been completely served, you commence to serve the sentence on the attempt vehicular hijacking.

Also, on the attempt aggravated vehicular hijacking, upon being released from the Department of Corrections, you would be subject to a period of mandatory supervised release on both of the charges for a term of three years. In addition to incarceration in the Department of Corrections, I could impose a fine against you in an amount not less than one dollar nor more than $10,000. Do you understand the possible sentences that could be imposed?

DEFENDANT: Yes, your Honor." (Emphasis added.)

¶ 8 Defendant stated he understood the potential sentencing consequences and that no promises had been made to induce him to plead guilty.

¶ 9 The court went on to fully and properly advise defendant of the rights that he was waiving by pleading guilty and to inquire whether defendant understood that his plea of guilty waived these rights. Defendant replied that he understood the rights he was forgoing and that his signed jury waiver was freely and voluntarily executed. Defendant affirmed that he was not forced, threatened, or coerced into pleading guilty. Defendant stated that he was satisfied with the representation provided by his trial attorney. Defendant understood that his guilty plea told the court "I'm guilty" and was "the highest form of self-incrimination that the law represents."

¶ 10 The factual basis for the plea established that on February 23, 2001, after dropping off his granddaughter at daycare, 48-year-old Ernest Harris was driving his car at 1300 Lake Shore Drive when defendant "collided" with Mr. Harris by walking in front of his car. Defendant and codefendant Rasson Davis, intending to steal Mr. Harris's car to commit later a drive-by shooting of a boy named Darius Smith, attempted to force Mr. Harris out of his car. Mr. Harris, however, had a swollen ankle and was unable to move quickly. Mr. Harris pulled the keys out of the ignition and said, "Please don't, please—and oh Lord," and when he began to open the driver's door, defendant, who stood by the driver's side door, pulled out a gun and shot Mr. Harris behind the left ear, killing him.

¶ 11 Defendant and Davis then ran to the house of a girl named Chanel, where defendant tried to pass the weapon off to Davis, who refused to take it. Following an investigation into Mr. Harris's death, defendant was arrested and admitted to shooting Mr. Harris in order to take his car to commit a drive-by shooting of a rival gang member.

¶ 12 The State then informed the court that the agreed-upon sentence, in this case, was a concurrent sentence of 30 years' incarceration for the first degree murder count (count II) and 15 years' incarceration for the aggravated hijacking count (count XIX).

¶ 13 After the trial court accepted the plea, defense counsel informed the trial court that defendant had no prior criminal history and that "[t]his was a mistake of a lifetime, and he has remorse regarding this, Judge." Defendant told the court that he was sorry for his actions. Per the agreement of the parties, the court imposed the agreed-upon sentence.

¶ 14 The trial court advised defendant that he had a right to appeal the judgment and sentence of the court but that in order to do that defendant was required to file a motion to withdraw his guilty plea.

¶ 15 Thirteen years later, on April 21, 2016, defendant filed an attorney-drafted postconviction petition, which alleged that (1) defendant's plea was involuntary because trial counsel misadvised him that he would be eligible for good conduct credit that would only require him to serve half of his sentence (15 years' imprisonment), (2) his attorney was ineffective for failing to move to suppress his confession, and (3) the trial court misadvised him that the upper end of the sentencing range for his offenses was life imprisonment or the death penalty when he pled guilty.

¶ 16 Defendant further alleged that his untimely filing was not due to his culpable negligence where the issuance of *People v. Kitchell*, 2015 IL App (5th) 120548, constituted a change in the law that enabled him to now challenge the validity of his guilty plea. Defendant alleged that until *Kitchell* was decided his claim was legally insufficient to demonstrate the deprivation of a constitutional right where it was a collateral consequence of pleading guilty. Defendant also claimed that his untimely filing should be excused where he suffered from learning disabilities.

¶ 17 The petition was supported by defendant's affidavit and an affidavit purported to be executed by his grandmother, "Harvey Brown."[4]

¶ 18 Defendant's affidavit focused on his claim that he was misled to believe that he would only have to serve 15 years of his 30-year sentence if he pled guilty. Defendant alleged that he would not have waived his trial rights had he known that he would be ineligible to receive day-for-day good conduct credit. The affidavit also alleged "[w]hen I entered my guilty plea, I did not know that if I went to trial, I could not have been sentenced to life without parole or the death sentence," and that "[b]ecause of Attorney Katz's misrepresentations to me, and because of the trial judge's erroneous information concerning the maximum sentence I could receive, my guilty plea was not voluntarily, knowingly or intelligently made."

¶ 19 On June 28, 2016, the trial court advanced the petition to the second stage.

_____

[4]The affidavit refers to defendant's grandmother as "Harvey Brown" and is signed "Harvey Brown." At the evidentiary hearing, Ms. Brown testified that her first name is "Harvie" and was misspelled in the affidavit, which she did not review before signing.

¶ 20    On October 17, 2016, the State filed a motion to dismiss defendant's petition. The State's motion alleged that (1) defendant's petition was untimely, (2) defendant's ineffective assistance of counsel claim was meritless where any error on the part of defense counsel was a collateral consequence that did not render the guilty plea involuntary, and (3) the record refuted defendant's claim that the trial court misadvised him as to the upper end of the potential sentencing range at the time of the guilty plea.

¶ 21    On December 7, 2016, defendant filed a response to the State's motion to dismiss.

¶ 22    On February 21, 2017, after hearing argument on the State's motion to dismiss the defendant's postconviction petition, the court advanced defendant's claim that he was misadvised that he would be eligible for day-for-day good conduct credit to the third stage.

¶ 23    An evidentiary hearing was held on the claim on January 11, 2018. Defendant's grandmother Harvie Mae Brown testified that, on the date that defendant pled guilty, defense counsel said that defendant had agreed to plead guilty in exchange for a 30-year sentence and would "get out in 15."

¶ 24    Defendant testified that he was prepared to go to trial when his trial attorney told him that if he pled guilty he would receive a 30-year sentence and have to serve 15 years in the Illinois Department of Corrections (IDOC). Defendant testified: "He said if I take the [t]rial, I get 70 years or better. They got 30 years on the table. If I take the 30 years, I have to do 15." Defendant asked counsel to discuss the plea deal with his parents to ensure that they agreed that defendant should accept the State's offer. Trial counsel spoke with defendant's parents and told defendant that they were okay with the deal.

¶ 25    Defendant then signed the plea papers. Defendant was 18 years old when he pled guilty. Defendant did not know that trial counsel had pending Attorney Registration and Disciplinary Commission (ARDC) matters.

¶ 26    On cross-examination, defendant admitted he was told at arraignment that the sentencing range on the murder charge was 20 to 60 years. Defendant knew that the attempted aggravated vehicular hijacking count could be ordered to run consecutively to the sentence on the murder count and that, by pleading guilty, the sentences would be ordered to run concurrently.

¶ 27    Defendant admitted he was admonished of his right to a trial by jury or by the court, that his entry of a guilty plea waived any trial in this matter, and that he told the court that his plea was not entered into as a result of any other promises. Defendant further admitted he learned he would be serving 100% of his sentence just nine days after pleading guilty upon arriving at Menard Correctional Center. Defendant claimed he called his parents to tell trial counsel to file a motion to withdraw his guilty plea and "hollered" at the IDOC counselor but never filed a direct appeal from his convictions.

¶ 28    Former attorney Craig Katz testified that he was a licensed attorney between 2001 and 2003 but was suspended from the practice of law in 2008 and never sought to reinstate his license. Mr. Katz, an attorney since 1981, was hired by defendant's family to represent defendant. Mr. Katz handled hundreds of murder cases, most of which went to trial.

¶ 29    Mr. Katz knew that in 2003 the sentencing range for murder was 20 to 60 years and could potentially be extended to natural life or death depending on the circumstances. The sentencing range for attempted aggravated vehicular hijacking was 4 to 15 years, and this sentence was also potentially subject to being extended depending on the circumstances.

¶ 30    Mr. Katz testified that defendant's case was negotiated over a significant amount of time before the State made an offer that was agreeable to defendant. The parties ultimately agreed to a 30-year sentence on one count of murder and a concurrent sentence on the attempted aggravated vehicular hijacking count. Mr. Katz specifically negotiated for the attempted aggravated vehicular hijacking not to run consecutive to the murder.

¶ 31    Mr. Katz spoke with defendant about how much time he would have to actually serve and, in response to being asked whether he told defendant that he would only have to serve 50% of his sentence, replied: "[c]ouldn't have. It wasn't the law." Mr. Katz was certain that he spoke with defendant's family prior to him pleading guilty and that he "couldn't possibly" have told them that defendant would only serve 50% of his sentence because "[t]hat wasn't what the law was." When defendant pled guilty, truth-in-sentencing was in effect and required that a defendant serve 100% of his murder sentence. Mr. Katz explained to defendant all of the rights that he was waiving by pleading guilty. Mr. Katz was willing to take defendant's case to trial, but based on his review of the evidence, Mr. Katz believed that negotiating with the State was in defendant's best interest. The decision to plead guilty was not rushed but made over a prolonged two-year time frame.

¶ 32    While Mr. Katz did not recall having a specific conversation with defendant concerning how long he would have to serve in jail, Mr. Katz could not recall any cases in which his clients did not ask how much time they would have to serve. Mr. Katz denied forcing defendant to plead guilty.

¶ 33    On cross-examination Mr. Katz admitted that he was suspended from the practice of law by the Illinois Supreme Court 16 days after defendant pled guilty. Mr. Katz maintained that he told defendant and his grandmother that defendant would have to serve 30 years in jail. Trial counsel testified that truth-in-sentencing was in effect for several years by the time that defendant pled guilty and that he "absolutely told defendant he would have to serve thirty years in the penitentiary."

¶ 34    On March 14, 2018, the trial court issued both oral and written findings. The court stated:

> "THE COURT: This matter is here for the Court's ruling after a third-stage postconviction hearing. In summary, Counsel, I did not find that the Defendant has met his burden in this matter. I did not find his evidence credible that he waited twelve years before claiming that his attorney told him he would serve half of the time. My reasons are more fully stated in the written order, but the defendant's postconviction petition is hereby dismissed."

¶ 35    In its written order, the trial court found that defendant failed to establish ineffective assistance of counsel based on his assertion that Mr. Katz misinformed him that he would be eligible to receive day-for-day good conduct credit. The court found that defendant received his release date calculation on September 12, 2003, less than 10 days after his plea of guilty, yet neither sought to withdraw his plea nor sent any correspondence to the court complaining of the alleged discrepancy.

¶ 36    The court then found it "incredible that defendant would learn that he was being required to serve thirty years, instead of the fifteen he alleges his attorney had promised and would wait over twelve years before bringing it to anyone's attention. As such, this court finds defendant has failed to meet his burden and that this issue may be dismissed."

¶ 37    Defendant filed a timely notice of appeal.

¶ 38                              II. ANALYSIS
¶ 39        A. Defendant's Claim That the Threat of a Now-Unconstitutional *De Facto*
                      Life Sentence Secured His Guilty Plea
¶ 40    In his attorney-drafted petition for postconviction relief, defendant alleged that his plea was involuntary where the trial court misadvised him of the proper upper end of the applicable sentencing range for murder when he pled guilty. Defendant relied on the trial court's admonition that "[u]nder certain circumstances, which again do not appear to be present in your case, the punishment in your case could be natural life in the penitentiary or death" and *Thompson v. Oklahoma*, 487 U.S. 815, 836-37 (1988) (opinion of Stevens, J., joined by Brennan, Marshall, and Blackmun, JJ.), where the Supreme Court held that the execution of a minor under 16 years of age is constitutionally prohibited, to substantiate his claim that his plea was not voluntarily made.

¶ 41    This claim has been abandoned on appeal and supplanted with an entirely new one. Defendant now alleges that his guilty plea resulted from "the threat that, if Brown went to trial, the court could impose a sentence in excess of 40 years, without any consideration being given to his youth." Defendant admits that this claim was not raised in his petition yet urges us to reach it as a matter of "judicial economy" based on his belief that the record is fully developed to permit such review.

¶ 42    The dissent criticizes the majority for finding that defendant abandoned his claim that his plea resulted from being erroneously admonished that the applicable sentencing range for murder included " 'the real threat of an unconstitutional life sentence, *or, \*\*\* as the judge incorrectly informed him, a possible death penalty*,' " (emphasis in original) (*infra* ¶ 102) and that "there is no reason to consider whether defendant was, or was not, threatened by *de facto* life in prison" (*infra* ¶ 105). The problem with the dissent's belief that we should address the claim originally raised in the postconviction petition is that it is *not* the claim raised on appeal.

¶ 43    We may not " 'search the record for unargued and unbriefed reasons to *reverse* a trial court judgment.' " (Emphasis in original.) *People v. Givens*, 237 Ill. 2d 311, 323 (2010). In *Givens*, our supreme court found that the appellate court violated this fundamental tenet of Illinois law by *sua sponte* considering an unbriefed claim. *Id.* at 329-30. We follow *Givens* and decline to consider defendant's now-abandoned claim of error where a careful review of defendant's opening and reply briefs leave no question that defendant's challenge is *Miller*-based and that he expressly concedes that this new claim is indeed forfeited.

¶ 44    While defendant's argument certainly relies on the court's alleged misstatement of the applicable sentencing range and counsel's testimony at the third-stage hearing, those "facts" are only relied on to allege a *Miller* claim of constitutional infirmity. To fully elucidate the basis for our conclusion, we turn to the precise allegations made in defendant's briefs.

¶ 45    In his opening brief, defendant avers
        "Brown should be allowed to withdraw his guilty plea because it was secured by the threat that, if Brown went to trial, the court could impose a sentence in excess of 40 years, without any consideration being given to his youth. Such a sentence would be in violation of *Miller v. Alabama*, 567 U.S. 460 (2012) and the Illinois Supreme Court's holding in *People v. Buffer*, 2019 IL 122327 and, as such, was involuntary."

- 8 -

In the very next sentence, defendant states "Brown acknowledges that he did not raise the issue in his postconviction petition. However, for reasons of judicial economy and because the record is sufficiently developed to address his claim, this Court should consider the issue for the first time on appeal."

¶ 46 Then, likening his case to *People v. Parker*, 2019 IL App (5th) 150192, defendant alleges that "[t]he transcript of Brown's plea proceedings demonstrates that the same 'reasonable threat' that existed in *Parker* of a sentence in excess of 40 years, was present in this case." Defendant's brief further explains that "[t]eenager Gregory Brown pled guilty under the threat of what we now know is would [*sic*] have been an unconstitutional life sentence" and that defendant's case "implicates *Miller* and *Buffer* and under *Nieto*, this Court should consider Brown's challenge to his plea agreement." Based on the trial court's failure to advise defendant "that he could only receive a sentence of 40 years if a judge found that he fell in the 'rarest' group of youthful offenders 'whose crimes reflect permanent incorrigibility,[5]' " defendant requested that we permit him to either withdraw his guilty plea or remand this matter for further proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)).

¶ 47 In his reply brief, defendant focuses on the State's claim that we should not consider this issue because it was not presented to the trial court and, as such, is forfeited. Defendant does not resurrect his original claim or allege that any portion of the current claim is not forfeited. He maintains that the rules of forfeiture should be relaxed where the record is sufficiently developed for its consideration and urges us to do so as a matter of judicial economy. Defendant clarifies that his claim is not "waived" where "it calls into question the government's power to constitutionally impose a *de facto* life sentence on a juvenile" and that his "plea agreement should not operate as a bar to his *Miller* claim." Defendant further maintains that

> "Brown's challenge to the constitutionality of the natural life sentencing provision, as applied to him, questions the State's power to prosecute and sentence him for his admitted conduct that would allow for him to be sentenced to no more than 40 years in prison without giving the trial court any discretion to consider his youth and its attendant characteristics and his rehabilitative potential as is required under both the eighth amendment and the Illinois proportionate penalties clause."

¶ 48 In sum, defendant's briefs unambiguously establish that his claim is no longer the claim that was originally pled and argued before the trial court but instead a *Miller*-based claim that he was admonished that he could receive what is *now* regarded as a *de facto* life sentence in excess of 40 years where such sentence "was not constitutionally available in this case absent any evidence of incorrigibility." As such, defendant admits that the claim on appeal is markedly distinct from the original issue pled and may only be reached by relaxing the rule of forfeiture. We will not reach back to resurrect his now-abandoned initial claim.

---

[5]We note that the United States Supreme Court recently limited the scope of *Miller* in *Jones v. Mississippi*, 593 U.S. ___, ___, ___, 141 S. Ct. 1307, 1311, 1316 (2021). The Court held that the eighth amendment creates no federal requirement that a trial court find a juvenile offender permanently incorrigible before imposing a life sentence. *Id.*

¶ 49 With respect to the claim that is raised on appeal, the State maintains that we should not consider this claim based on defendant's failure to raise it in his postconviction petition. We agree with the State.

¶ 50 The Act provides a three-stage mechanism by which a criminal defendant may assert that his conviction resulted from the substantial denial of a constitutional right. *Id.*; *People v. Delton*, 227 Ill. 2d 247, 253 (2008). At the first stage of a postconviction proceeding, the defendant is required to set forth only the "gist" of a constitutional claim, and the circuit court may summarily dismiss the petition if it finds that the petition is frivolous or patently without merit, *i.e.*, that it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009).

¶ 51 Section 122-2 of the Act specifically provides that "[t]he petition shall *** clearly set forth the respect in which petitioner's constitutional rights were violated" (725 ILCS 5/122-2 (West 2016)), while section 122-3 provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived" (*id.* § 122-3). Generally, our review of a circuit court's dismissal of a petition at the second stage is *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 52 It is black letter law that a defendant may not raise an issue for the first time on appeal from the dismissal of a postconviction petition if the petition failed to include that particular argument. *People v. Jones*, 211 Ill. 2d 140, 148 (2004); *People v. Coleman*, 183 Ill. 2d 366, 388 (1998); *People v. McNeal*, 194 Ill. 2d 135, 153 (2000); *People v. Jones*, 213 Ill. 2d 498, 505-06 (2004); *People v. Petrenko*, 237 Ill. 2d 490, 502 (2010).

¶ 53 On at least two occasions, our supreme court has criticized appellate court decisions for violating this basic tenet of Illinois law by engaging in substantive review of claims not raised in the defendant's postconviction petition. In *Jones*, the court noted "our appellate court has repeatedly overlooked the waiver language of section 122-3 and has addressed claims raised for the first time on appeal for various and sundry reasons." *Jones*, 213 Ill. 2d at 506. In *Pendleton*, 223 Ill. 2d at 475, the court referenced its earlier criticism in *Jones* when noting that such trend had not abated: "The appellate court's disposition in this case is yet another example of that inappropriate propensity."

¶ 54 We heed the unambiguous directive of our supreme court and decline to consider defendant's newly minted claim that his guilty plea resulted from the trial court threatening him with a now-unconstitutional *de facto* life sentence in excess of 40 years without consideration of his juvenile status. This claim was neither alleged in the postconviction petition nor considered by the trial court and is therefore not properly raised at this time. As in *People v. Boyd*, 347 Ill. App. 3d 321, 333 (2004), we find that "the circuit court judge was never given the opportunity to address the new allegations raised by counsel on appeal of the postconviction dismissal."

¶ 55 We reject defendant's reliance on *People v. Nieto*, 2020 IL App (1st) 121604-B,[6] and *People v. Parker*, 2019 IL App (5th) 150192, to overcome his forfeiture of this claim where

_____

[6]Our supreme court issued a supervisory order instructing the appellate court to vacate its judgment in *Nieto* and consider whether a different result was warranted based on its holdings in *People v. Buffer*, 2019 IL 122327, and *People v. Holman*, 2017 IL 120655. *People v. Nieto*, No. 120826 (Ill. Mar. 25, 2020) (supervisory order). We only consider the subsequent appellate court decision in *People v. Nieto*, 2020 IL App (1st) 121604-B.

these cases are factually inapposite. *Nieto* involved the application of *Miller v. Alabama*, 567 U.S. 460 (2012), *People v. Reyes*, 2016 IL 119271, and *People v. Buffer*, 2019 IL 122327 (all decided during the pendency of defendant's appeal from the first-stage summary dismissal of his postconviction petition), to the defendant's 78-year *de facto* life sentence following his jury trial. *Nieto*, 2020 IL App (1st) 121604-B. The court addressed the merits of the defendant's claim that his sentence was unconstitutional where *Miller* was issued after the dismissal of the defendant's petition and the record was "sufficiently complete" to review his claim. *Id.* ¶ 48. That record included a preliminary sentence investigation (PSI) and transcripts from the sentencing hearing that was held before the trial court.

¶ 56    Here, defendant relies on *Nieto* to claim that "forfeiture does not apply to juveniles' as-applied eighth amendment challenges under *Miller* and *Buffer*." Defendant's claim overstates *Nieto*'s holding, where the court recognized that our supreme court has yet to "resolve the appellate court's dispute regarding whether forfeiture applies in [these] circumstances." *Id.* ¶ 47. The court's decision was based on the issuance of *Miller* after the circuit court dismissed the defendant's petition and on a record deemed "sufficiently complete to review defendant's claim." *Id.* ¶ 48.

¶ 57    We reject defendant's reliance on *Nieto* as providing us with a valid basis for ignoring the rule of forfeiture. Defendant did not receive a *de facto* life sentence. No PSI was prepared, nor was there a proper sentencing hearing with attendant circuit court findings since defendant accepted fully negotiated concurrent sentences of 30 years for murder and 15 years for attempted aggravated vehicular hijacking. While the decision in *Buffer* may, in appropriate circumstances, permit consideration of a forfeited claim based on the actual imposition of a sentence in excess of 40 years, defendant's argument goes too far. *Buffer* is not properly construed as, *ipso facto*, rendering all guilty pleas involuntarily or unknowingly made just because a defendant was advised that he could receive a sentence in excess of 40 years. For this reason, we do not believe that the doctrine of forfeiture is properly relaxed in this case.

¶ 58    Our conclusion is unaffected by *Parker*, 2019 IL App (5th) 150192. In *Parker*, the trial court denied the defendant leave to file his successive postconviction petition, which alleged that his 35-year sentence was a *de facto* life sentence in violation of *Miller*. *Id.* ¶ 9. The appellate court held that the issuance of *People v. Buffer* after the submission of briefs by the parties satisfied the requirement of "cause" to excuse the defendant's untimely filing under the cause and prejudice test. *Id.* ¶ 18. The court also found "prejudice" where the defendant's guilty plea was influenced by the State's sentencing recommendation (a cap of 50 years) and the trial court's repeated admonishments that the defendant could receive a life sentence. *Id.* As such, the court reversed and remanded for second-stage proceedings. *Id.* ¶ 19.

¶ 59    *Parker* instructs that a defendant may potentially establish "cause" to excuse an otherwise untimely filing based on supreme court precedent that was unavailable at the time of defendant's filing and potentially establish "prejudice" based on a case's particular circumstances. Neither proposition, however, impacts this case, which is not a successive petition but an initial postconviction petition that was advanced to the second stage.

¶ 60    Additionally, unlike *Parker*, defendant's negotiated plea did not threaten defendant with a natural life sentence or the death penalty. A plain reading of the trial court's statements made it clear that defendant was not eligible to receive either sentence. We will not graft the court's ruling in *Parker* onto this case's wholly dissimilar procedural posture.

¶ 61     We also consider the court's holding in *People v. Robinson*, 2021 IL App (1st) 181653. In *Robinson*, the appellate court reversed the trial court's summary dismissal of the defendant's *pro se* postconviction petition and remanded for second-stage proceedings where the defendant entered into a negotiated plea for a 35-year sentence after being admonished that he faced a potential 20-to-60-year sentence. *Id.* ¶¶ 1, 6, 8, 33. The defendant's petition alleged that his plea failed to consider any of the *Miller* factors where that " 'new constitutional [r]ule of [l]aw' " was not available at the time of his plea. *Id.* ¶ 10. Based on the foregoing, the court found that the defendant's petition "states the gist of a constitutional claim that his plea was secured by the threat of a *de facto* life sentence" and remanded for further second-stage proceedings under the Act. *Id.* ¶¶ 36-37.

¶ 62     *Robinson*, too, has no application to this case, where the court's holding turned on the fact that the petition was dismissed at the first stage. Moreover, *Robinson* demonstrates precisely what is missing in this case: an assertion, in the petition, that defendant's plea was constitutionally infirm because no consideration was given to any of the *Miller* factors.

¶ 63     Here, defendant received second-stage review of the claims raised in his petition and then third-stage review of the ineffective assistance of counsel claim. Defendant was provided with every opportunity to establish a substantial violation of a constitutional right. Yet defendant's postconviction petition neither directly nor obliquely alleged that his plea resulted from being threatened with a now-unconstitutional sentencing range of 20 to 60 years for the murder charge without consideration of defendant's juvenile status.

¶ 64     For the foregoing reasons, we decline to consider the merits of this claim and find it forfeited.

¶ 65                    B. Defendant's Contention That Trial Counsel Was Ineffective

¶ 66     In his second assignment of error, defendant contends that the trial court erroneously rejected his claim that his plea resulted from trial counsel misinforming him that he would only have to serve 15 years in IDOC. The State maintains that defendant has failed to establish that the trial court's dismissal of this claim after a third-stage evidentiary hearing was manifestly erroneous. We agree with the State.

¶ 67     The Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). To be entitled to postconviction relief, a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged. *Id.* The Act provides the time frame for filing a postconviction petition:

          "[N]o proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United Sates Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2016).

¶ 68     In cases not involving the death penalty, the Act provides for postconviction proceedings that may consist of as many as three stages. At the first stage, the circuit court has 90 days to review a petition and may summarily dismiss it if the court finds it is frivolous and patently without merit. *Id.* § 122-2.1(a)(2). At the second stage of postconviction proceedings, counsel may be appointed for the defendant, if the defendant is indigent. *Id.* § 122-4. Counsel's duties, pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), include consultation with the defendant to ascertain his contentions of deprivation of a constitutional right, examination of the record of the proceedings at the trial, and amendment of the petition, if necessary, to ensure that the defendant's contentions are adequately presented.

¶ 69     After counsel has made any necessary amendments to the petition, the State may move to dismiss a petition or an amended petition pending before the court. 725 ILCS 5/122-5 (West 2016). If that motion is denied or if no motion to dismiss is filed, the State must answer the petition, and barring the allowance of further pleadings by the court, the proceeding then advances to the third stage, a hearing wherein the defendant may present evidence in support of the petition. *Id.* § 122-6.

¶ 70     At the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002); *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). At the second stage of proceedings, all well-pled facts that are not positively rebutted by the trial record are to be taken as true, and in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). When a petition is advanced to a third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). A circuit court's ruling is manifestly erroneous if it is arbitrary, unreasonable, and not based on the evidence. *People v. Wells*, 182 Ill. 2d 471, 481 (1998).

¶ 71     In this case, even though the State maintained that defendant's petition was untimely filed,[7] the circuit court advanced defendant's claim that his attorney advised him that he would only be required to serve 50% of his 30-year sentence to the third stage of postconviction proceedings. After an evidentiary hearing where defendant, his grandmother, and trial counsel testified, the trial court found that defendant had failed to demonstrate a substantial showing of a constitutional violation and dismissed the petition. Defendant has failed to establish that the trial court's rejection of this claim was manifestly erroneous.

¶ 72     A criminal defendant is entitled to effective assistance of trial counsel at all critical stages of the criminal proceedings, including the entry of a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 44. Under the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984), in order to

---

[7]Defendant relied on *People v. Kitchell*, 2015 IL App (5th) 120548, to justify his 13-year filing delay. However, the conclusion reached in *Kitchell* was reached eight years earlier in *People v. Stewart*, 381 Ill. App. 3d 200, 206 (2008), and both cases were subsequently overruled in *People v. Brown*, 2017 IL 121681, ¶ 47. The State, however, has abandoned its previous claim that defendant's untimely filing was unexcused. As such, we do not consider whether this might provide an alternative basis for affirming the dismissal of defendant's postconviction petition. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000).

establish ineffective assistance of counsel a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and that he suffered resulting prejudice.

¶ 73 The *Strickland* standard applies to ineffective assistance of counsel challenges that arise from the guilty-plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong of *Strickland* is identical in such cases, but the second-prong prejudice analysis is dependent on the nature of the claim brought by the defendant. *People v. Brown*, 2017 IL 121681, ¶ 26. Relying on the United States Supreme Court's holding in *Lee v. United States*, 582 U.S. ___, 137 S. Ct. 1958 (2017), the *Brown* court held that, when an ineffective assistance of counsel claim is based on matters related to the defendant's defense strategy, a defendant must show that absent his counsel's deficient performance he would have been acquitted or had a viable defense. *Brown*, 2017 IL 121681 ¶ 34.

¶ 74 In contrast, when a defendant's ineffective assistance claim alleges that counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Id.* ¶ 48. A conclusory allegation that the defendant would not have pled guilty and demanded a trial is insufficient to prove prejudice. *Id.* ¶ 47. Whether a defendant has established prejudice requires consideration of the surrounding circumstances and may be determined by comparing the consequences of a defendant's conviction following a trial to the consequences of the defendant entering the guilty plea. *Id.* ¶¶ 36, 48.

¶ 75 *Brown* is highly relevant to our consideration of defendant's claim. In *Brown*, one month after entering a negotiated plea of guilty to a charge of armed habitual criminal in exchange for a sentence of 18 years' imprisonment, the defendant filed a *pro se* motion for a reduction of sentence, alleging that his counsel advised the defendant that he would serve only 50% of his 18-year sentence. *Id.* ¶ 11. The trial court denied the motion because the plea was fully negotiated. *Id.* The defendant then filed a timely postconviction petition, which alleged, *inter alia*, that he was denied effective assistance of counsel where his attorney misinformed him that he would be eligible for good time credit and only have to serve 50% of his sentence. *Id.* ¶ 13. The trial court advanced the defendant's petition to the second stage.

¶ 76 The defendant's amended petition alleged that he was denied effective assistance of counsel where his guilty plea resulted from being erroneously told that he would be eligible to receive day-for-day good conduct credit when, in actuality, he was required to serve 85% of his sentence, an additional six years in prison. *Id.* ¶ 15. The defendant alleged that, had he been properly advised, he "would not have accepted the plea and would have taken the case to trial wherein he would have been acquitted." (Internal quotation marks omitted.) *Id.* The defendant claimed that shortly before he pled guilty trial counsel confirmed that the defendant would only have to serve 50% of his sentence and that he only learned the truth upon arriving at IDOC.

¶ 77 The State conceded that, for second-stage purposes, the defendant's petition satisfied the first prong of *Strickland*. *Id.* ¶ 27. The State maintained, however, that the defendant's amended petition failed to establish resulting prejudice. See *id.* ¶¶ 27-28. After articulating the applicable standard to be applied in reviewing the defendant's claim, our supreme court concluded that the circumstances surrounding the plea failed to establish prejudice. *Id.* ¶ 49. In reaching this conclusion, the court noted that nothing in the defendant's plea colloquy demonstrated that his primary focus was on serving 50% of his sentence. *Id.* ¶ 51. Additionally,

in comparing the sentencing consequences that would have flowed from the defendant being convicted after a trial (the imposition of a mandatory 15-year firearm enhancement) to the sentencing consequences from accepting the plea, the court held that the defendant failed to show that a decision to reject the plea would have been rational under the circumstances. *Id.* ¶¶ 50, 52.

¶ 78    In this case, the trial court advanced defendant's petition to the third stage; thus, our review is not restricted to the issue of prejudice. The State has maintained throughout the proceedings that trial counsel's performance was not deficient where counsel denied defendant's charge that counsel misinformed defendant that he would be eligible to receive day-for-day good conduct credit. The issue was fully litigated below. Defendant and his grandmother testified that trial counsel told them that defendant would only have to serve 50% of his sentence, and former trial counsel adamantly denied the charge.

¶ 79    The trial court's ruling hinged on the fact that defendant's claim was fundamentally inconsistent with his inaction upon learning that he would be required to serve the entirety of his 30-year sentence. The trial court's conclusion strikes us as eminently reasonable where defendant testified that he learned that he would have to serve the full 30-year sentence only nine days after arriving at IDOC yet did absolutely nothing to bring this "injustice" to the attention of the court for well over a decade. We will not second-guess the trial court's credibility determinations where it was the trial court's role, as the fact finder, to determine the credibility of the witnesses, the weight to be afforded their testimony, and to resolve any evidentiary conflicts. See *People v. Domagala*, 2013 IL 113688, ¶ 34. That the trial court found defendant's claim to be wholly inconsistent with his inaction is not indicative of court error, let alone manifest error.

¶ 80    Concerning the prejudice prong, we find *Brown* dispositive. Under *Brown*, defendant's blanket assertion of prejudice was insufficient as a matter of law to even require a third-stage evidentiary hearing. Where nothing additional was presented at the third stage to establish that defendant's decision to reject the State's offer would have been rational under the circumstances of this case, defendant's claim necessarily fails to make a third-stage showing of substantial prejudice.

¶ 81    Additionally, as in *Brown*, defendant's inability to demonstrate resulting prejudice is borne out by consideration of the plea's circumstances. The record is silent on the question of how defendant's sentence would be served. We have no reason to question that, had this case gone to trial, defendant would have been convicted based on the stipulated factual basis for the plea.

¶ 82    In comparing the minimum sentence that defendant would have faced with the sentence that his attorney negotiated for, we note that, at the very least, defendant would have been subject to a mandatory minimum aggregate sentence of 49 years. Defendant would have been subject to a 25-year sentencing enhancement for personally discharging a firearm that proximately killed Mr. Harris (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2000)), and a minimum sentence of 4 years for attempted aggravated vehicular hijacking would have been statutorily mandated to run consecutive to a minimum 20-year sentence on the murder charge. *Id.* § 5-8-4(e)(1). In the absence of anything more than defendant's claim that he would have chosen to go to trial, we conclude that defendant has failed to establish that a decision to reject the plea bargain would have been rational under the circumstances of this case.

¶ 83    In conclusion, defendant has failed to establish that the trial court's rejection of defendant's claim that his guilty plea resulted from the ineffective assistance of counsel was manifestly

erroneous.

¶ 84                                    III. CONCLUSION
¶ 85        For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 86        Affirmed.

¶ 87        PRESIDING JUSTICE GORDON, concurring in part and dissenting in part:
¶ 88        I concur in part and dissent in part with respect to defendant's differing claims, as explained below.

¶ 89        In his postconviction petition, defendant claimed that his guilty plea was not knowing and voluntary for three separate and independent reasons: (1) because his trial counsel mistakenly advised him that he would be eligible for day-for-day good time credit; (2) because his trial counsel was ineffective for failing to try to suppress his illegal confession, which then induced, in part, his guilty plea; and (3) because the trial court misadvised him that, while the normal sentencing range was 20 to 60 years, an extended term was possible, which "could be natural life in the penitentiary or death."

¶ 90        The court below dismissed the first claim after holding a third-stage evidentiary hearing specifically on this issue alone. I concur with the majority in affirming the court's dismissal of this claim regarding counsel's allegedly mistaken advice. After conducting a full third-stage evidentiary hearing at which both defendant and his trial counsel testified, the court below did not find defendant credible on this issue, and this court generally defers to a trial court's credibility findings after a third-stage evidentiary hearing. See *People v. Harris*, 2021 IL App (1st) 182172, ¶ 49 (when reviewing a third-stage evidentiary hearing, "[w]e generally defer to the circuit court as the finder of fact since it is in the best position to observe the conduct and demeanor of the parties and witnesses").

¶ 91        With respect to defendant's second claim, the court below dismissed it at the second stage. On this appeal, defendant does not discuss this claim at all in his appellate briefs, and the majority does not address it in its opinion, other than to acknowledge its existence and dismissal. I find this claim forfeited for our consideration. "Points not argued are waived." *People v. Fields*, 2020 IL App (1st) 151735, ¶¶ 39-40; see also *People v. Cardona*, 2013 IL 114076, ¶ 19; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("[p]oints not argued are forfeited").

¶ 92        However, I must respectfully dissent from the majority's affirmation of the second-stage dismissal of defendant's third claim.

¶ 93        Since the trial court dismissed this claim at the second stage, our review is *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31 (a second-stage dismissal is reviewed *de novo*). *De novo* consideration means that we perform the same analysis that a trial judge would perform. *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 107.

¶ 94        The issue at a second-stage hearing is whether the petitioner has made a substantial showing such that an evidentiary hearing is warranted. *Sanders*, 2016 IL 118123, ¶ 37. At the second stage, the allegations in the petition are "liberally construed in favor of the petitioner." *Sanders*, 2016 IL 118123, ¶ 31. "All well-pleaded factual allegations must be taken as true ***." *Sanders*, 2016 IL 118123, ¶ 37. A court must accept as true both the petition's allegations and its supporting evidence "unless they are positively rebutted by the record of the original

trial proceedings." *Sanders*, 2016 IL 118123, ¶ 48. "[T]here are no factual issues" at the second stage. *Sanders*, 2016 IL 118123, ¶ 31.

¶ 95     In his verified petition, defendant alleges that the threat of the imposition of the death penalty "coerced [him] into pleading guilty in this case." Defendant alleges that, when the trial judge stated that a sentence of natural life or the death penalty could be imposed, defendant understood the judge to be "telling petitioner that these were possible sentences he could receive if he did not plead guilty." At the second stage, we accept defendant's allegations as true, unless positively rebutted by the record. "Credibility determinations may be made only at a third-stage evidentiary hearing." *Sanders*, 2016 IL 118123, ¶ 42.

¶ 96     In his brief to this court, defendant argues that, at the time of his plea proceedings, the State of Illinois prohibited the death penalty for juvenile defendants under the age of 18, and he is correct. Section 9-1(b) of the Criminal Code of 1961 provided, in relevant part, that only a "defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of first degree murder may be sentenced to death." 720 ILCS 5/9-1(b) (West 2000).

¶ 97     The court below dismissed this claim at the second stage, finding that the trial court did not tell defendant that he could receive natural life or the death penalty. Applying *de novo* review, I must respectfully disagree.

¶ 98     At the plea proceeding, the trial court admonished defendant that:

> "Under certain circumstances, which *** do not appear to be present in your case, the punishment in your case could be natural life in the penitentiary or death. Do you understand the possible sentences that can be imposed?"

¶ 99     No presentence investigation report was prepared in the case at bar.[8] When the trial court stated that circumstances that could trigger the death penalty did "not appear to be present in your case," defendant was well aware that no investigation had been done due to his guilty plea and an agreed-upon sentence. From defendant's perspective, there would appear to be no reason to admonish him that "the punishment in your case could be natural life in the penitentiary or death," unless "the punishment in [his] case could be natural life in the penitentiary or death."

¶ 100     The erroneous admonishment by the trial court was echoed and, thus, amplified by the erroneous advice of defendant's own counsel. During the third-stage evidentiary hearing, trial counsel was asked what he told his client about the possible "sentencing range," and counsel replied:

> "At the time, 20 to 60 years; and then, depending upon extenuating circumstances, it could have been extended sentences. It could have been—depending upon the circumstances, it could have been natural life. *It could have been death*." (Emphasis added.)

¶ 101     The majority spends several pages discussing this claim without disputing the merits of it. The majority finds only that it was forfeited by defendant's new, court-appointed attorneys on appeal. I must respectfully disagree.

---

[8]On September 3, 2003, defendant signed a waiver of his right "to a Pre-Sentence Investigation and written report," as part of the guilty plea proceedings.

¶ 102    Defendant argues repeatedly throughout his brief to this court that the trial court mistakenly told him that he could receive natural life or death. The first point heading in his brief argues: "[defendant's] plea to first degree murder was involuntary because it was secured by a threat that [defendant], who was 15 years old at the time of the offense, could be convicted and sentenced to *** life without parole or death." The third sentence of his "Argument" is: "The judge told him before he pleaded guilty that he could *** possibly even receive the death penalty, if he went to trial." On the following pages, defendant argues that "the judge told [defendant] that he could be in prison for natural life and even suggested that the death penalty was a possibility." Again, defendant argues that, although the judge stated that circumstances in his case did not appear to qualify him for the death penalty, "the judge raised the specter that circumstances could come to light at trial which might warrant the death penalty in [defendant's] case." The final paragraph of this section in his brief begins with: "In sum." Defendant sums up by arguing that he "pleaded guilty to a 30-year sentence [1] under the real threat of an unconstitutional life sentence, *or*, [2] *as the judge incorrectly informed him, a possible death penalty.*" (Emphasis added.) Given defendant's repeated arguments on the death penalty issue throughout his brief, I cannot find that he forfeited it for our consideration.

¶ 103    The majority accuses the dissent of " ' "search[ing] the record" ' " to raise issues *sua sponte*, in violation of *People v. Givens*, 237 Ill. 2d 311, 323 (2010). *Supra* ¶ 43. Respectfully, I cannot find that reading the point headings in a party's appellate brief counts as "searching the record" or violating *Givens*. In fact, in *Givens*, our supreme court appeared to list and rely on the point headings in order to establish the issues raised. See *Givens*, 237 Ill. 2d at 322.

¶ 104    Where we must accept as true the petition's allegations "unless *** positively rebutted by the record" and where the record lends support to defendant's allegations that he felt threatened by the death penalty, I would remand for a third-stage evidentiary hearing on this issue. See *Sanders*, 2016 IL 118123, ¶ 48.

¶ 105    With respect to defendant's *Miller* arguments, there is no reason to consider whether defendant was, or was not, threatened by *de facto* life in prison, when the record lends support to his allegations that he felt threatened by natural life and death, which are far worse penalties.

¶ 106    In sum, I concur with the majority's finding to affirm the dismissal of defendant's first claim because of the trial court's credibility determinations after a third-stage evidentiary hearing. I also concur with the majority's finding to affirm the dismissal of defendant's second claim due to his forfeiture of this claim by failing to argue it at all on appeal. However, for the reasons set forth above, I must respectfully dissent from the majority's finding to affirm the second-stage dismissal of defendant's third claim.